# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ELAINE PHILLIPS,**                                   Chapter 13
      Debtor                                   Case No. 07-14620-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The Chapter 13 Trustee objected to confirmation of Debtor's Chapter 13 Plan on the ground that it failed the "best efforts test" of 11 U.S.C. § 1325(b)(1)(B). The Debtor, Elaine Phillips (the "Debtor"), an "above median income debtor," responded to the Trustee's Objection, asserting that her expenses, for purposes of ascertaining her "projected disposable income" under section 1325(b)(1)(B), should be governed by a strict construction of 11 U.S.C. §§ 1325(b)(3) and 707(b)(2), as well as Official Form 22C. The issue presented is whether the Debtor has sustained her burden of demonstrating that she has committed all her projected disposable income for the applicable commitment period for repayment of her unsecured debt.

The Court scheduled the Trustee's Objection and the Debtor's Opposition for

1

hearing on November 8, 2007. The material facts necessary to decide the issue are not in dispute, and neither party requested an opportunity to submit evidence at the hearing. Both parties filed briefs. Accordingly, the Court makes the following findings of fact and conclusion of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

The Debtor filed a Chapter 13 petition on June 26, 2007, together with, *inter alia,* her Schedules, Statement of Financial Affairs, Form 22C and Chapter 13 plan. The Debtor is an unmarried, veterinary technician employed by the Massachusetts Society for the Prevention of Cruelty to Animals. As disclosed on Schedule J-Current Expenditure of Individual Debtor(s), she pays rent in the sum of $250 per month and leases an automobile through Chase Auto Finance.

On Official Form 22C, the Debtor reported, on line 20, current monthly income of $4,624.83, annualized to $55,497.96. Because her annualized monthly income exceeded the applicable median family income, she properly calculated the applicable commitment period for her Chapter 13 plan as five years pursuant to 11 U.S.C. § 1325(b)(4). On Form 22C, she was then required to determine the amount of her "disposable income" with reference to the deductions allowed under 11 U.S.C. § 707(b)(2) using National and Local Standards of the Internal Revenue Service ("IRS").[1] She utilized the sum of $458.00 for

---

[1] Debtors calculate their deductions in Part IV of Form 22C. According to the court in In re Meek, 370 B.R. 295, 305 (Bankr. D. Idaho 2007),

Form 22C enables both below median income and above median income debtors to comply with BAPCPA's complex requirements. Current

2

"Local Standards: housing and utilities; non-mortgage expenses" for her applicable county and family size, and the sum of $1,041.00 for the "Local Standards: housing and utilities; mortgage/rent expenses" for her applicable county and family size. Additionally, she deducted $703.00 pursuant to the IRS National Standards for Allowable Living Expenses; and a total of $771.00 pursuant to the Local Standards for transportation ($300) and transportation ownership/lease expense for one vehicle ($441); as well as $1,269.16 for federal, state and local taxes, other than real estate and sales taxes; and $100.00 for telecommunication services, other than telephone service expenses. On Form 22C, her total monthly expenses equaled $4,342.16. After claiming an additional monthly expense of $46.67 on subpart B of Part IV for contribution to the care of a household or family member and accounting for the monthly administrative expense of $23.60 for her Chapter 13 case, she calculated her monthly disposable income under § 1325(b)(2) as $212.40 on line 58.[2]

On Schedule I - Current Income of Individual Debtors, the Debtor reported average monthly income of $3,107.00. She calculated that amount by adding $216.67 in estimated

---

monthly income is . . . the same for all debtors and is calculated in Part I. Determination of the "applicable commitment period" and whether expenses are to be calculated under § 1325(b)(3) comprise Parts II and III respectively. Below median income debtors stop there, and verify and execute Form 22C. Id. at lines 23, 60. Above median income debtors must complete the balance of Form 22C. Id. at line 23. Part IV captures all of the allowable § 707(b)(2) expenses for above median income debtors. Upon completing Parts I-IV, the above median income debtor moves to Part V to calculate "disposable income" which is shown on line 58.

[2] The calculation is as follows:  $4,624.83 - $4,412.43 ($4,342.16 + $46.67 + $23.60) = $212.40.

3

overtime to her projected monthly income of $4,212.00 for total monthly income of $4,428.67,[3] from which she deducted payroll taxes ($1,274.00) and insurance ($47.67).[4] On Schedule J, the Debtor reported average monthly expenses of $2,246.00.[5]

In contrast to the availability of net income of $212.40 reported on Form 22C, the Debtor reported net monthly income of $861.00 on Schedule J. This discrepancy is at the heart of the instant dispute between the Debtor and the Chapter 13 Trustee because the Debtor filed a five-year plan pursuant to which she proposes to make monthly plan payments of $212.40 which would result in an 18.33% dividend to unsecured creditors whose claims total $51,662.00. If the Debtor is required to utilize the net income figure calculated on Schedule J, the dividend to unsecured creditors would be almost 100%.

## III. DISCUSSION

A. <u>The Statute</u>

Section 1325(b) of the Bankruptcy Code, as amended by the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), provides in relevant part the following:

---

[3] The Court is unable to reconcile this figure with the Debtor's report of $4,624.83 in gross monthly income on Form 22C.

[4] On Form 22C, the Debtor claimed $1,269.16 for expenses associated with taxes.

[5] These expenses included $250 per month for rent (versus $1,041 pursuant to the IRS Local Standard); $115.00 for electricity and heating fuel; $100.00 for telephone service; $100.00 for cable TV; $40.00 for internet access; $50.00 for home maintenance; $650.00 for food; $100.00 for clothing; $40.00 for laundry and dry cleaning; $20.00 for medical and dental expenses; $160.00 for recreation; $50.00 for charitable contributions; $110.00 for automobile expenses; $27.00 for excise tax payments; $354.00 for automobile installment payments; $50.00 for gym fees, and $30.00 for pet supplies.

4

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that *all of the debtor's projected disposable income to be received in the applicable commitment period* beginning on the date that the first payment is due under the plan *will be applied to make payments to unsecured creditors under the plan.*

(2) For purposes of this subsection, *the term "disposable income" means current monthly income received by the debtor* (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) *less amounts reasonably necessary to be expended - -*

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions . . .; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(3) *Amounts reasonably necessary to be expended* under paragraph (2) *shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2),* if the debtor has current monthly income, when multiplied by 12, greater than–

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner . . .

11 U.S.C. § 1325(b)(1)-(3)(emphasis supplied).   Section 1325(b)(2) incorporates section

707(b)(2)(A) and (B), which sets forth the means test for determining whether a Chapter 7

5

case is  presumptively abusive.[6]  In other words, a debtor's current monthly income is

---

[6] Section 707(b)(2)(A) provides in relevant part the following:

(b)(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of–

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575 whichever is greater; or

(II) $10,950.

(ii)(I) *The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor*, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by

the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,650 [FN1] per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of

reduced by 10 classes of monthly expenses set forth in section 707(b)(2)(A)(ii). These

classes include National Standards issued by the IRS; Local Standards issued by the IRS;

and actual monthly expenses for the categories specified as Other Necessary Expenses by

the IRS. *See generally*, 5 Keith M. Lundin, *Chapter 13 Bankruptcy*, § 471.1 at 471-6 (3d ed. 2000

& Supp. 2006)(hereinafter, Lundin).

B. The Statute's Problematic Language and Interpretive Difficulties

In a recent article, Bankruptcy Judge Thomas F. Waldron and Neil M. Berman

observed:

---

secured debts shall be calculated as the sum of--

(I) the total of all amounts scheduled as contractually due to
secured creditors in each month of the 60 months following
the date of the petition; and

(II) any additional payments to secured creditors necessary
for the debtor, in filing a plan under chapter 13 of this title,
to maintain possession of the debtor's primary residence,
motor vehicle, or other property necessary for the support of
the debtor and the debtor's dependents, that serves as
collateral for secured debts;

divided by 60.

(iv) The debtor's expenses for payment of all priority claims
(including priority child support and alimony claims) shall
be calculated as the total amount of debts entitled to priority,
divided by 60.

11 U.S.C. § 707(b)(2)(emphasis supplied). Pursuant to section 707(b)(2)(B), "the
presumption of abuse may only be rebutted by demonstrating special circumstances,
such as a serious medical condition or a call or order to active duty in the Armed Forces
. . . ." *See* In re Guerriero, No. 07-14648-JNF, __ B.R. __ (Bankr. D. Mass. Feb. 4,
2008)(interpreting section 707(b)(2)(A)(iii)).

8

It is now two years since the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and as shown by extensive majority and minority positions on a significant number of its provisions, there is little consensus on much of the enacted text of BAPCPA. A review of a growing body of bankruptcy court and appellate decisions on issues as basic as a debtor's eligibility to file bankruptcy, the applicability of the automatic stay, the rights of secured vehicle creditors and the calculation of disposable income in chapter 13, demonstrates that the bankruptcy courts have often reached diametrically opposed legal conclusions. Although it would be unreasonable to expect complete, or nearly complete, uniformity in the interpretation of BAPCPA, the stark differences in how the new law is being interpreted throughout the nation's bankruptcy courts have compromised, if not crippled, any pretense of predictability in the analysis a court might apply in interpreting its many poorly drafted provisions.

Hon. Thomas F. Waldron and Neil M. Berman, *Principled Principles of Statutory Interpretation: A Judicial Perspective after Two Years of BAPCPA,* 81 Amer. Bankr. L. J. 195-96 2007)(footnotes omitted).   The present dispute between the Debtor and the Chapter 13 Trustee involves one of the provisions Judge Waldron and his co-author cited: the calculation of disposable income or, more accurately, the meaning of "projected disposable income" in section 1325(b)(1) with reference to the expense side, rather than the income side, of the definition of "disposable income" contained in section 1325(b)(2) and (b)(3) of the Bankruptcy Code, which, as noted above, incorporates section 707(b)(2)(A) and (B). [7]

---

[7] Judge Waldron and Neil M. Berman in their article set forth contrasting approaches to statutory construction, which they denominate as purposivism and textualism.  According to the authors, both approaches are evident in the majority and dissenting opinions, respectively, in <u>Marrama v. Citizens Bank of Massachusetts</u>, __ U.S. __, 127 S.Ct. 1105 (2007), a case which involved interpretation of 11 U.S.C. § 706(a) and whether bankruptcy courts have authority to take action pursuant to 11 U.S.C. § 105(a) to prevent conversion of a case from Chapter 7 to Chapter 13 (even though section 706(a) provides that Chapter 7 debtors may convert to Chapter 13 at any time) to prevent abuse of process.  Waldron and Berman, *supra*, at 207.  The authors note that shortly after its decision in <u>Marrama</u>, the Supreme Court applied a textualist analysis in

Judge Waldron and his co-author also observed that "[a]rguably no change in BAPCPA has generated as fundamental a difference in the bankruptcy courts' reported opinions as how to determine projected disposable income for above median family income debtors in chapter 13 and, therefore, what such debtors are required to pay to unsecured creditors in their chapter 13 plans." Id. at 220 (footnote omitted).  In the view of Judge Waldron and his coauthor, "[t]hese divergent views will produce, with exactly the same past and present income and expenses, spectacularly different results for debtors, trustees and creditors from district to district, and, even worse, from judge to judge in the same district. Id. (footnote omitted).

Other commentators also have noted interpretive difficulties resulting from BAPCPA's revisions to section 1325(b).  Keith M. Lundin, a bankruptcy judge and leading Chapter 13 commentator, stated, "The lobbyists who drafted BAPCPA were apparently clueless with respect to the function and methodology that made § 1325(b) the critical measure of a debtor's effort at confirmation of a Chapter 13 plan."  Lundin, *supra*, at 466-1.

---

Travelers Cas. and Sur. Co. of Am. v. Pacific Gas & Elec. Co., __ U.S. __, 127 S.Ct. 1199 (2007).  They suggest the following:

> . . . [I]nterpretation and application of BAPCPA, in a manner consistent with the Supreme Court's general body of bankruptcy law reflecting different approaches to statutory interpretation, is not a mechanistic and rigid procedure. Rather, it is a holistic and nuanced process that demands analysis beyond the recitation of plain meaning mantras and conclusory canons of interpretation.

Waldron and Berman, *supra,* at 210.

10

He added:

> "Disposable income" for purposes of § 1325(b) is no longer based on *actual* income at or near confirmation.  Instead, BAPCPA substitutes a new concept, current monthly income (CMI), that is an average of income received by the debtor during the six months before the month of the petition.  Chapter 13 debtors are small, volatile economies.  CMI mirrors the debtor's financial circumstances during the slide into Chapter 13.  CMI is easily manipulated by the timing of the petition.  CMI does not change as the debtor's circumstances change from the petition through the years of the Chapter 13 case.  These issues disconnect the disposable income test from the reality of individual Chapter 13 debtors and their plans.
>
> From this doubtful platform, BAPCPA builds the new disposable income test as a series of income exclusions and expense deductions that reflect the political environment of the enactment of BAPCPA. . . .
>
> For over-median income Chapter 13 debtors, the expense-policing function of an objection to confirmation has been neutralized by BAPCPA.  Substituted is a mathematical formula that fixes expense deductions that will routinely be both insufficient to sustain life and in excess of any amount that would survive the reasonable and necessary test of pre-BAPCPA law.

Lundin *supra*, at 466-2-466-3.  In this case, the mathematical formula produces the latter result.

Many courts have observed that the phrase "projected disposable income" is not new as it appeared in section 1325(b)(1) prior to BAPCPA. *See generally* Kibbe v. Sumski (In re Kibbe), 361 B.R. 302, 307 (B.A.P. 1st Cir. 2007)(hereinafter Kibbe).  What is new, as Judge Lundin and others have reported, are the concepts of "current monthly income," "applicable commitment period" and the definition of "disposable income."   Judge Waldron and his co-author summarized the dispute engendered by the use of the newly defined term, "disposable income," and the old phrase, "projected disposable income," in terms of purposivist and texturalist perspectives and discussed two approaches which have developed:  one that requires the court to consider future income and expenses and the

11

other that is formulaic, rejecting the notion that disposable income is a separate term or even limiting it to a presumption in view of the overall structure of, and BAPCPA's changes to section 1325(b). Id. at 221-23.  The authors conclude:

> Both lines of decisions apply recognized principles of statutory interpretation and consider, to varying degrees of emphasis, the purpose and the text of the statute. The determination of which of these approaches is correct, or in the language of Justice Jackson, "infallible," is a much harder question and one that ultimately rests with the "final" Supreme Court or congressional correction.

Id. at 223 (footnote omitted).[8]

---

[8] In contrast to Judge Waldron and Neil Berman, the courts in In re Ross, 375 B.R. 437 (Bankr. N.D. Ill. 2007), *amended other grounds,* 377 B.R. 599 (Bankr. N.D. Ill. 2007), and  In re Nance, 371 B.R. 358 (Bankr. S. D. Ill. 2007), determined the existence of not two, but three interpretations of "projected disposable income."   In summary, courts adhering to the first approach hold that "projected disposable income" must be calculated by using the debtor's actual income at the moment of filing as reflected on Schedule I.  *See* In In re Fuller, 346 B.R. 472 (Bankr. S.D. Ill. 2006); In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006). *See also* In re Balcerowski, 353 B.R. 581, 590 (Bankr. E.D. Wis. 2006); In re Edmunds, 350 B.R. 636, 646-47, 649 (Bankr. D.S.C. 2006); In re Demonica, 345 B.R. 895, 900 (Bankr. N.D. Ill. 2006). The court in Ross noted that the Fuller and Hardacre decisions "completely ignore a debtor's 'current monthly income' (as defined in § 101(10A) and referenced on line 20 of Form B22C) in favor of the income amount listed on Schedule I. . . ." Ross, 375 B.R. at 441(citing Nance, 371 B.R. at 362).

    The court in Ross described the second approach, one taken by the United States Bankruptcy Appellate Panel for the First Circuit in Kibbe, as using the number on the debtor's B22C Form as the "projected disposable income" unless the debtor or some other party can show that there has been a substantial change in circumstances such that the figures on the B22C Form are not commensurate with a fair projection of the debtor's budget in the future. Ross, 375 B.R. at 441 (citing In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006); In re Edmundston, 363 B.R. 212 (Bankr. D. N.M. 2007); In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007), as well as In re Meek, 370 B.R. 294, 303 (Bankr. D. Idaho 2007); In re Arsenault, 370 B.R. 845, 852 (Bankr. M.D. Fla. 2007); In re Watson, 366 B.R. 523, 531-32 (Bankr. M. D. 2007) ; In re Grant, 364 B.R. 656, 667 (Bankr. E.D. Tenn. 2007); In re Purdy, 373 B.R. 142, 152 (Bankr. N.D. Fla. 2007); In re Foster, No. 05-50448-HCD, 2006 WL 2621080, at *6-7 (Bankr. N.D. Ind. Sept. 11, 2006); In re LaPlana, 363 B.R. 259, 266 (Bankr. M.D. Fla. 2007) (noting that "parties calculating projected disposable income

The issue present in this case highlights the difficulties observed by Judge Waldron and Judge Lundin: Should the Debtor's monthly plan payment be $212.40 pursuant to a textualist reading of section 1325(b)(1) through (3), or some amount closer to $861.00, an amount that would satisfy the "best efforts" test of the former version of section 1325(b)

---

must use the same income exclusion, *e.g.* social security income, and use the same allowed IRS standards as permitted in the means test; however, the numbers will change based on changes in the debtor's financial circumstances"); In re Risher, 344 B.R. 833, 837 (Bankr. W.D.Ky. 2006) (stating that the B22C Form "represents a floor, not a ceiling"); In re Grady, 343 B.R. 747, 751 (Bankr. N.D. Ga. 2006) (noting that the figure on the B22C Form is useful as an "estimate," but that a court should evaluate a debtor's past and current financial status to determine disposable income). According to the court in Ross, alleged changes in circumstances are examined at the confirmation hearing when the debtor is given an opportunity to present evidence that the figures on Form B22 do not adequately predict future finances. 375 B.R. at 442. "This method has the appeal of common sense in an understandable effort to avoid seemingly absurd or impractical results where there are wide variations between the pre-petition income period captured in the B22C Form and the reasonably anticipated post-confirmation income or expenses indicated by Schedules I and J." Id. *See also* In re Pak, 378 B.R. 257 (B.A.P. 9th Cir. 2007)("in interpreting 'projected disposable income' in § 1325(b)(1)(B), 'disposable income,' as defined in § 1325(b)(2), is the starting point for determining 'projected disposable income,' subject to adjustment, based on evidence, to reflect reality going forward").

Finally, the court in Ross described the third approach as holding "that the plain meaning of § 1325(b) requires a simple mathematical calculation using Form 22C Form to determine "projected disposable income." Id. at 442 (citing Nance, 371 B.R. at 364 and In re Alexander, 344 B.R. 742 (Bankr. E.D. N.C. 2006). *See* In re Berger, 376 B.R. 42 (Bankr. M.D. Ga. 2007); In re Kalb, 366 B.R. 802 (Bankr. S.D. Ohio 2007); In re Tranmer, 355 B.R. 234 (Bankr. D. Mont. 2006); In re Barr, 341 B.R. 181 (Bankr. M.D.N.C. 2006); In re Rotunda, 349 B.R. 324 (Bankr. N.D. N.Y. 2006); In re Guzman, 345 B.R. 640 (Bankr. E.D. Wis. 2006)). *See also* In re Austin, 372 B.R. 668, 680 (Bankr. D. Vt. 2007); In re McGillis, 370 B.R. 720 (Bankr. W.D. Mich. 2007); In re Hanks, 362 B.R. 494 (Bankr. D. Utah 2007); In re Miller, 361 B.R. 224, 234 (Bankr. N.D. Ala. 2007); In re Brady, 361 B.R. 765, 774 (Bankr. D. N.J. 2007); In re Farrar-Johnson, 353 B.R. 224, 228 (Bankr N.D. Ill. 2006).

The courts in Ross and Nance adopted the third approach.

using the Debtor's Schedules I and J, pursuant to a purposivist approach?

In In re Meek, 370 B.R. 294 (Bankr. D. Idaho 2007), the court referenced the two camps described by Judge Waldron, while correctly noting that attempts to group decisions into camps, while helpful, often fails to capture the nuances of decisions.  370 B.R. at 300 n. 17.  The court also observed that "[t]hough statutory construction is not a matter of plebiscite, the advocates of a flexible approach may be in the majority thus far.  Id. at 301.

While the "camps" represented by the diverging lines of cases grow ever bigger, a further divide has emerged with respect to the expense side of calculating disposable income and involves the precise issue now before the Court, namely whether the Debtor may deduct the full housing allowance provided by the IRS Local standards or whether she is limited to her actual monthly expense, as reflected in Schedule J, for purposes of plan confirmation.  As the court in Meek observed:

> Use of § 707(b)(2) expenses for above median income debtors cuts across the divide in the case law . . . , and has been adopted by proponents of both stricter [textualist] and more flexible [purposivist] approaches to projecting the income side of disposable income.  Even some courts that recognize an ability to evaluate the predictive accuracy of current monthly income, using schedule I or other evidence, find that the mandatory language of § 1325(b)(3) incorporating § 707(b)(2) limits similar flexibility regarding expenses.

370 B.R. at 305.[9]

_____

[9] The court in Meek cited the following cases in support of its observation:

In re Edmundston, 363 B.R. 212, 219-20 (Bankr. D. N.M 2007)("In sum, the Court finds that in computing the 'projected disposable income' for an above-median income debtor, the income side of the equation begins with Form B22C and takes into account the debtor's actual income as reported

14

on schedule I, while the expense side of the equation is restricted by the applicable expenses reported on Form B22C."); In re Teixeira, 358 B.R. 484, 487 n. 6 (Bankr. D. N.H. 2006) ("The plain language of section 1325(b)(3) instructs that an above-median debtor's expenses "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)."); In re Bossie, No. A06-00432-DMD,  2006 WL 3703203 at *2 (concluding that while Form 22C is not the sole factor to be used in determining debtors' anticipated or projected income, expenses for above median debtors are determined under IRS guidelines incorporated in section 707(b)(2); Hardacre, 338 B.R. 718, 721-722 (Bankr. N.D. Tex. 2006)(holding that if debtor is above median income, "then the debtor's expenses must be determined in accordance with the means test in section 707(b)(2)").

 370 B.R. at 305 n. 35. See also In re Guzman, 345 B.R. 640 (Bankr. E.D. Wis. 2006), in which the court stated:

> The question posed is whether such an above-median debtor with no disposable income under § 1325(b)(3) (as shown on Form B22C) but who does appear to have excess income when Schedules I and J are compared, is required to pay that excess income into the plan. Although contrary to the stated purpose of BAPCPA and seemingly discriminatory against chapter 13 debtors with incomes below the median, the unambiguous language of the new statute compels but one answer: the above-median debtor's expense deductions are governed by Form B22C, not by Schedule J. If the above-median debtor's Form B22C contains enough deductions, the debtor will be entitled to obtain confirmation of a plan paying nothing to the unsecured creditors, even though the debtor's budget shows that excess funds are available.

345 B.R. at 642.  See also In re Barr, 341 B.R. 181, 185 (Bankr. M.D. N.C. 2006)(same); In re Alexander, 344 B.R. 742, (Bankr. E.D. N.C. 2006)(same).  But see In re McGillis, 370 B.R. 720, 730 (Bankr. W.D. Mich. 2007)(adopting the mechanistic approach to projected disposable income, but holding that "Section 1325(b), not Section 707, ultimately controls the determination  of disposable income for purposes of plan confirmation . . . and that section permits Debtors to deduct only those expenditures that are reasonably necessary for their *future* support and maintenance")(emphasis supplied).

C. <u>Does the mandatory language of § 1325(b)(3), incorporating § 707(b)(2), limit flexibility regarding expenses</u>?

1. Introduction

Judge Lundin states in his treatise that for above-median income debtors, BAPCPA "lost all sense of logic and direction." *See* Lundin, *supra*, at § 471.1 at 471-2. These words ring true in this case where, if the statutory language is applied literally, the Debtor conceivably could obtain confirmation of a Chapter 13 plan that would permit her to either save or spend over $600 per month, rather than contribute that sum to payment of debt. Lundin explains the dilemma: "The mathematical test for determining whether a presumption of abuse arises in § 707(b)(2)(A) and (B) was not designed with disposable income in a Chapter 13 case in mind. The fit is worse than imperfect – it is illogical at the level of theory; impossible of precise execution; and every drafting miscue is magnified by the ill-conceived application." <u>Id.</u> Like Judge Waldron, Judge Lundin observes that "[r]easonable men and women will differ, and differ mightily, as they struggle with the details of trying to determine 'amounts reasonably necessary to be expended --' using a measuring stick designed for a completely different purpose." <u>Id.</u> at 471-3. Judge Lundin also observes that "[t]he use of IRS Standards will be endlessly problematic in Chapter 13 cases" because, unlike revenue officers and employees of the Collection Division of the IRS who have some flexibility in the use of the National and Local Standards, the statutory language of sections 1325(b)(3) and section 707(b)(2)(A)(ii) utilizes the term "shall" and

16

omits any reference to discretion or flexibility. <u>Id.</u> at 471-7.[10] Lundin concludes that "[o]verlaps and duplications [of monthly expense deductions from CMI] were not removed or neutralized because there is no imperative to do so in a formula that is not a budget," <u>id.</u> at 472-14, predicting that deductions pursuant to the Local Standards will be one of the most controversial provisions of BAPCPA. <u>Id.</u> at 476-1. Lundin quotes from the Internal Revenue Manual, which states: "'Taxpayers will be allowed the local standard or the amount actually paid, whichever is less,'" <u>id.</u> at 476-2, noting that under section 707(b)(2)(A)(ii)(I), "[t]he only possible conclusion is that the amount specified by the IRS is the amount allowed, without regard to the debtor's *actual* housing or transportation expenses." <u>Id.</u> at 476-3 (emphasis supplied).

> 2. Cases holding that the provisions of sections 1325(b)(3) and 707(b)(2)(A)(ii)(I) are mandatory

In the most recent case addressing the issue under sections 1325(b)(3) and 707(b)(2)(A), <u>In re Briscoe</u>, 374 B.R. 1 (Bankr. D.D.C. 2007), an above median income debtor whose housing expense was significantly less than the Local Standard sought confirmation of a plan over the objection of the Chapter 13 trustee who urged the court to use the methodology of the Financial Analysis Handbook of the Internal Revenue Manual ("IRM"). The bankruptcy court addressed issues identical to the ones before this court. Specifically, the court framed the issues as follows:

---

[10] *See* <u>In re Barr</u>, 341 B.R. 181, 185 (Bankr. M.D.N.C. 2006)(("The use of 'shall' in section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income.").

The first question for the court is whether Congress intended for debtors to use the Local Standards as fixed deductions in the calculation of disposable income for above median-income debtors or intended for courts to apply the Local Standards in a manner consistent with the Financial Analysis Handbook, which directs that "taxpayers will be allowed the local standard or the amount actually paid, whichever is less." IRM § 5.15.1.7(4). If Congress intended the former course of action, the court must then consider whether the debtor's calculation of current monthly income on Official Form 22C controls the calculation of her "projected disposable income" for purposes of § 1325(b)(1). Finally, if the court finds that the debtor's current monthly income as derived from Official Form 22C dictates the debtor's "projected disposable income" under § 1325(b)(1), it must decide whether a chapter 13 plan of repayment that provides less funding to unsecured creditors than the debtor could actually afford satisfies the requirement of § 1325(a) that the plan "be proposed in good faith." 11 U.S.C. § 1325(a)(3).

374 B.R. at 6.[11] Because the issues in <u>Briscoe</u> mirror those present in the instant case, a full discussion of the court's reasoning is warranted,

With respect to the first issue, the court identified the conundrum that bankruptcy courts confront in interpreting section 707(b)(2)(A)(ii)(I), which states that the debtor's monthly expenses "shall be the *applicable* monthly expenses amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the dat of the order for relief. . . ." 11 U.S.C. § 707(b)(2)(A)(ii)(I)(emphasis supplied).   The court articulated the specific statutory construction issue as follows:

What does the word 'applicable' mean in this context? Does it mean, as the debtor suggests, that you cross-match the debtor's location and status against

_____

[11] The Chapter 13 Trustee did not object to the Debtor's Chapter 13 plan based upon a lack of good faith.  *See* 11 U.S.C. § 1325(a)(3).

the standards as published, and no more? Or does it mean, as the trustee contends, that this court should interpret the standards as the IRS would, including any direction or discretion given to IRS employees by the IRS internal publications?

Briscoe, 374 B.R. at 7 (quoting In re Slusher, 359 B.R. 290, 307-08 (Bankr. D. Nev. 2007)). The court in Slusher interpreted "applicable" as the Local Standard expense as adjusted by the Internal Revenue Manual because "[i]n referring to such specialized standards, it would be quite odd if Congress intended to preclude courts from examining the context in which the authoring agency . . . used and employed those standards." 359 B.R. at 309. *See also* In re Rezentes, 368 B.R. 55, 61-62 (Bankr. D. Hawaii 2007).

The court in Briscoe observed, however, that the view espoused in Slusher is not widely accepted and that most courts construe "applicable" with reference to the subsequent phrase, "*actual* monthly expenses" that may be deducted for "Other Necessary Expenses" (emphasis suppled). Briscoe, 374 B.R. at 8. According to the court in Briscoe, courts reason that because Congress used the term "actual" in one context and the term "applicable" in another, "the phrase 'applicable monthly expense amounts' cannot refer to actual monthly expenses as a consequence." Id. (citing, *inter alia*, In re Farrar-Johnson, 353 B.R. 224, 230-31 (Bankr. N.D. Ill. 2006)). *But see* In re Ransom, No. NV-07-1254-DBaMo, 2007 WL 4625248, *3-*5 (B.A.P. 9th Cir. Dec. 27, 2007). The court in Briscoe, after referring to the IRM and noting that most of the values set forth in the Local and National Standards come from the Bureau of Labor Statistics Consumer Expenditure Survey, determined that the IRS collected and applied objective data for the National and Labor Standards and that its raw data is "readily adaptable for use in other contexts." Briscoe, 374 B.R. at 9. The

court concluded:

> The provisions of the Financial Analysis Handbook dictating how that data
> should be used are not so malleable. They are instructions directed at a
> specific audience (tax collectors) for a specific purpose (collecting delinquent
> taxes). Assuming that Congress did not intend for debtors and the courts and
> trustees that oversee them to become amateur tax collectors, it would be
> much odder for Congress to have imported the IRS's internal collection
> procedures into the Bankruptcy Code than for Congress to have referred to
> the objective data used in applying those procedures without requiring
> debtors to follow the procedures themselves.

Id. (citing In re Chamberlain, 369 B.R. 519, 525-26 (Bankr. D. Ariz. 2007)).  Although the

court noted that the use of the National and Local Standards as part of the means test's

presumption of abuse test can foster uniformity and avoid litigation, id., it was most

persuaded by the language of section 707(b)(2) itself.  It stated:

> The provision at issue refers to "applicable monthly expense amounts
> specified under the . . . Local Standards," 11 U.S.C. § 707(b)(2)(A)(ii)(I), not
> "applicable monthly expense amounts specified under the Financial Analysis
> Handbook of the Internal Revenue Manual" or, more simply, "applicable
> monthly expense amounts specified under the Internal Revenue Manual."
> This is not a trivial distinction. As Judge Wedoff notes in a comprehensive
> article on the means-testing provisions imposed by BAPCPA, the Local
> Standards (along with the National Standards) are not located within the
> Financial Analysis Handbook at all, but rather are found separately on the
> IRS's website. Eugene R. Wedoff, Means Testing in the New § 707(b), 79 Am.
> Bankr.L.J. 231, 254 (2005). Thus, the reference in § 707(b)(2) to the Local
> Standards is not a shorthand way of referring to the Financial Analysis
> Handbook, but rather denotes an entirely separate source of information.

Briscoe, 374 B.R. at 9-10. Thus, the bankruptcy court in Briscoe adopted what it described

as the simplest, most obvious interpretation of section 707(b)(2)(A)(ii)(I) by reading

"applicable" "as being subordinate to the same limiting phrase ("specified under the . . .

Local Standards") as the object (monthly expense amounts) that it modifies." Id. at 10.  The

court also found support for its view in the legislative history because a prior version of BAPCPA provided that debtors were to calculate the expense allowances with reference to "the applicable National Standards, Local Standards, and Other Necessary Expenses allowance . . *under the Internal Revenue Service financial analysis* for expenses in effect as of the date of the order for relief." The court noted that the phrase, "under the Internal Revenue Service financial analysis" was removed from the final version of amended section 707(b)(2). Id. (citing In re Fowler, 349 B.R. 414, 419 (Bankr. D. Del. 2006)).

The Briscoe court offered the following reasons for its interpretation: 1) that Congress rationally could have determined that the means test's presumption of abuse should arise from objective data that avoid inquiry into the debtor's actual circumstances, with the burden shifting to the debtor to show special circumstances, id. at 10; and 2) that Congress rationally could have opted to employ the more mechanical approach of section 1325(a)(3) for above-median income debtors to relieve the court of the "obligation to make largely subjective judgments regarding what is a reasonable expense." Id. at 11. Although the Briscoe court noted that its approach could produce anomalous results for debtors whose incomes are just below or above the median, such that a below median income debtor with expenses identical to an above median income debtor might be required to pay more under a plan than his higher-income counterpart, it did not find that the potential for anomalous results warranted a different interpretation of the statute. Id. Thus, the Briscoe court concluded that section 1325(b)(3) created "a mechanical, objective test" for determining expenses. The court, however, fashioned an exception: "an above-median

21

income debtor's plan that proposes to pay the debtor's disposable income employing the

National and Local Standards in computing expenses in accordance with § 1325(b)(3) might

still be objectionable in *extraordinary circumstances* under § 1325(a)(3) on the basis of a lack

of good faith." Id. at 12 (emphasis supplied).  With respect to the debtor, however, the

court determined that her claimed housing expense of $1,012 did not violate section

1325(a)(3).

The court in Briscoe, then turned to the issues raised under section 1325(b)(2) and

endorsed the holding in Kibbe, which involved a below median income debtor. It stated:

> . . . I agree with the Jass and Hardacre line of cases that the phrase "projected
> disposable income" in § 1325(b)(1) refers to income that it is reasonable to
> project that the debtor will receive. I do not mean to suggest, however, that
> a debtor (or other party-in-interest) can simply substitute the figures set forth
> in the debtor's schedules for those found in Official Form 22C in determining
> projected disposable income. Neither Schedule I, which is used to compute
> a debtor's monthly income, nor Schedule J, which does the same with respect
> to monthly expenses, use the same methodology as that set forth in §§
> 1325(b)(2) and 1325(b)(3) (at least, not for above-median income debtors).
> Consequently, Schedule I is only marginally relevant in determining a
> debtor's projected disposable income for purposes of a debtor's chapter 13
> plan. Schedule J is similarly unhelpful where above-median income debtors
> are concerned. *See* In re Edmondson, 363 B.R. at 218-19 (holding that
> "Schedule J is irrelevant" in computing projected disposable income for
> above-median income debtors).

374 B.R. at 18-19(footnotes omitted).  It fashioned the following test:

> . . . "courts must consider *changes in circumstances, both increases and decreases
> to income and expenses*, to a debtor's financial situation, being always guided
> by the allowed methodology set forth in the means test." In re LaPlana, 363
> B.R. at 266 (emphasis added). *Where an above-median income debtor is concerned,
> the debtor (or other party-in-interest) must demonstrate either a change or
> reasonably anticipated change in the debtor's income using the methodology set forth
> in § 1325(b)(2) or a change in the circumstances giving rise to the applicable expense
> figures dictated by the Local and National Standards (or a change in actual expenses*

*for those types of expenses falling under the Other Applicable Expenses category in the Financial Analysis Handbook) if he wishes to prove that his future income is any different from his current income.* In the absence of such evidence, the disposable income figure listed on the debtor's Official Form 22C will serve as the only evidence of the debtor's disposable income and will therefore dictate the amount of funds to be committed to unsecured creditors under the debtor's plan of repayment. Official Form 22C will, in other words, have precisely the same function as the debtor's schedules had pre-BAPCPA: the evidentiary source for a presumption of disposable income that can be rebutted through the submission of extrinsic evidence. *See* In re Slusher, 359 B.R. at 299 ("The historical nature of 'dispositive income' is a presumptive guide to the prospective 'projected disposable income,' but only a guide.").

Id. at 19 (emphasis supplied)(footnotes omitted).  The Briscoe court, finding that the trustee had presented no evidence that circumstances giving rise to the debtor's claimed expense amount of $1,012 had changed, upheld the presumption that she would incur the same expense in the future and that her disposable income would thus remain the same as a consequence. Id. at 20.

Finally, the court in Briscoe turned to the issue of good faith, a confirmation requirement set forth at 11 U.S.C. § 1325(a)(3).  The court stated:

The means test now incorporated into the "projected disposable income" requirement accomplishes Congress' goal of removing discretion from the judiciary, thereby preventing wayward judges from abusing their discretion by crediting debtors for unreasonable expenses. Unfortunately, it also introduces a new means for abuse of the system, as opportunistic debtors may be able to claim expenses under the Local or National Standards that they do not actually have. In those extreme circumstances where the debtor's manipulation of the means test amounts to an abuse of the chapter 13 process, the court must deny confirmation of the debtor's plan even if the requirements of § 1325(b) are met, for "[§] 1325(b) is a hazard, not a harbor."

374 B.R. at 21(citing In re McGillis, 370 B.R. at 749-51)(footnote omitted).  The court added:

That this is the proper interpretation of § 1325(b) is supported by the analogous treatment of bad faith in the case of a debtor whose case does not

23

run afoul of the means test's presumption of abuse under § 707(b)(2). The §
1325(b)(3) calculation of disposable income is but a mechanical test for
determining that the debtor is proceeding reasonably, but it does not purport
to cover all instances of bad faith that may arise from the debtor's actual
financial circumstances. It is similar to the means test of § 707(b)(2),
employed to determine whether a debtor's utilization of chapter 7 is
presumptively abusive. Even if, after a chapter 7 debtor makes the
calculations required by the means test of § 707(b)(2), the presumption of
abuse under § 707(b)(2)(A)(I) does not arise or is rebutted, the court is
instructed that when it determines whether a case should be dismissed as an
abuse of chapter 7, the court must consider:

> (A) whether the debtor filed the petition in bad faith; or
> (B) the totality of the circumstances . . . of the debtor's financial
> situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

Courts have interpreted § 707(b)(3) as permitting a court to consider a
debtor's actual ability to pay debts in ruling on a § 707(b)(1) motion to
dismiss based on abuse even if the presumption of abuse under the means
test of § 707(b)(2) has not arisen in the case or has been rebutted. *See* <u>In re
McGillis</u>, 370 B.R. at 744-47 ("ability to pay is a factor in the totality of
circumstance test"); <u>In re Pfeifer</u>, 365 B.R. 187, 192-93 (Bankr.D.Mont.2007)
("a debtor's ability to pay is still an important factor under § 707(b)(3),
notwithstanding the means test of § 707(b)(2)"); <u>In re Henebury</u>, 361 B.R. 595,
606-07 (Bankr.S.D.Fla.2007)("Either ability to pay or bad conduct in
connection with the bankruptcy will warrant dismissal for abuse under §
707(b)(3)". (Emphasis in original.)). *But see* <u>In re Nockerts</u>, 357 B.R. 497,
505-08 (Bankr.E.D.Wis.2006) ("while ability to pay is a factor in the totality
of circumstances test, . . . if it is the only indicia of abuse, the case should not
be dismissed under that test"). When such a debtor converts his case to
chapter 13 to avoid dismissal under § 707(b)(1), it stands to reason that the
debtor ought not to be able to utilize § 1325(b)(3) (and the expenses provided
by the same means test of § 707(b)(2)) as a safe harbor preventing scrutiny of
his actual expenses in assessing his actual ability to pay creditors in
determining whether bad faith is present. <u>In re McGillis</u>, 370 B.R. at 746-47.

<u>Briscoe</u>, 374 B.R.at 22.

In addition to the decision in <u>Briscoe</u>, the decision in <u>In re Swan</u>, 368 B.R. 12 (Bankr.

N.D. Cal. 2007), a case decided about six months before <u>Briscoe</u>, is instructive.  In that case,

the bankruptcy court also addressed the same issue as the one before the court: "whether

a debtor whose actual housing expense is lower than the IRS standard may nevertheless

deduct the standard amount."  <u>Id.</u> at 21.[12]  Noting the existence of three decisions on the

issue, <u>In re Farrar-Johnson</u>, 353 B.R. 224 (Bankr. N.D. Ill. 2006)(debtor entitled to full

amount of applicable housing deduction without consideration of expenses); <u>In re</u>

<u>Naslund</u>, 359 B.R. 781 (Bankr. D. Mont. 2006) (same), and <u>In re Rezentes</u>, 368 B.R. 55 (Bankr.

D. Haw.  2007)(debtor entitled to lesser of the IRS local standard or the actual amount of

the housing expense), the court in <u>Swan</u> sided with the decisions in <u>Farrar-Johnson</u> and

<u>Naslund</u>, reasoning as follows:

> If the Court were to accept Creditor's position and cap Debtor's housing
> deduction on Form B22C at her actual expense, it would have the effect of
> locking Debtor in to that expense for the duration of the chapter 13 Plan.
> Such a result would be unfair to the Debtor because it is highly unlikely that
> Debtor's housing expense will remain at the current level throughout the
> Plan term. Circumstances inevitably change. Rents generally go up. People
> move. If Debtor's rent were to increase by ten percent, that would amount to
> $80. But under Creditor's position, Debtor would be unable to find money
> in her budget to pay for that increase, because it would already have been
> pledged toward payment of unsecured creditors. That potentially would
> result in Debtor defaulting in her Plan payments (because she would be
> forced to divert funds allocated to the Plan toward staying current on her
> rent) or, worse yet, being evicted from her home. If Debtor is unable to make
> her Plan payments, the case likely would be converted to chapter 7, and
> creditors would receive a lower return than they are entitled to under the
> Plan. None of these events are in the best interest of Debtor or the unsecured
> creditors.

---

[12] In that case, the debtor proposed to pay her net income of $525 per month for
36 months, a sum determined with reference to Schedules I and J, instead of her
"disposable income" of $59.60 for 60 months determined with reference to Form 22C.

Swan, 368 B.R. 21-22.[13]

The court in Swan based its analysis in part on cases addressing whether debtors who own their motor vehicles free and clear of liens may claim a deduction for transportation ownership or leases expenses on Schedule 22C. In April of 2007, at the time the court issued its opinion, eleven courts held that a debtor was not entitled to the deduction,[14] while fourteen held otherwise.[15] *See also* In re Morgan, 374 B.R. 353 (Bankr. S. D. Fla. 2007)(court reached the same conclusion as the court in Swan, namely that the debtor was entitled to deduct housing expenses under the IRS Local Standard for which he qualified, notwithstanding that he owned his home free and clear of liens and

---

[13] The court rejected the reasoning in Rezentes, because despite its holding in favor of Creditor's position, it illustrated "the inefficiency of such a holding, as well as the perversity of the policy it encourages." Id. at n.8.

[14] *See, e.g.,* In re Ceasar, 364 B.R. 257 (Bankr. W.D.La. 2007); In re Slusher, 359 B.R. 290 (Bankr.D.Nev.2007); In re Devilliers, 358 B.R. 849 (Bankr. E.D.La. 2007);In re Wiggs, 2006 WL 2246432 (Bankr. N.D.Ill. August 4, 2006); In re Harris, 353 B.R. 304 (Bankr. E.D.Okla. 2006); In re Oliver, 350 B.R. 294 (Bankr. W.D.Tex. 2006); In re Carlin, 348 B.R. 795, (Bankr. D.Or. 2006); In re Lara, 347 B.R. 198 (Bankr.N.D.Tex.2006); In re Barraza, 346 B.R. 724 (Bankr. N.D.Tex. 2006); In re McGuire, 342 B.R. 608 (Bankr. W.D.Mo.2006); and In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 20060). *See also* In re Canales, 377 B.R. 658 (Bankr. C.D. Cal. 2007); In re Cole, 371 B.R. 454 (Bankr. D. Wash. 2007).

[15] *See, e.g.,* In re Watson, 366 B.R. 523(Bankr. D.Md. 2007); In re Enright, 2007 WL 748432 (Bankr. M.D.N.C. Mar. 6, 2007); In re Crews, No. 06-13117, 2007 W.L. 626041 (Bankr. N.D. Ohio, Feb. 23, 2007); In re Sawdy, 362 B.R. 898 (Bankr. E.D. Wis.2007); In re Zak, 361 B.R. 481 (Bankr. N.D. Ohio 2007); In re Prince, 2006 WL 3501281 (Bankr.M.D.N.C. Nov.30, 2006); In re Naslund, 359 B.R. 781 (Bankr. D. Mont. 2006); In re McIvor, 2006 WL 3949172 (E.D.Mich. Nov. 15, 2006); In re Wilson, 356 B.R. 114 (Bankr.D.Del.2006); In re Haley, 354 B.R. 340 (Bankr. D.N.H. 2006); In re Grunert, 353 B.R. 591 (Bankr. E.D.Wis. 2006); In re Hartwick, 352 B.R. 867 (Bankr. D.Minn. 2006); In re Fowler, 349 B.R. 414 (Bankr. D.Del. 2006); and In re Demonica, 345 B.R. 895 (Bankr.N.D.Ill.2006). *See also* In re Barrett, 371 B.R. 855 (Bankr. S.D. Ill. 2007).

encumbrances). *See also* <u>In re Broers</u>, 2007 WL 4166144 at *6  (Bankr. E. D. Wash. Nov. 20,

2007).

> 3. Cases holding that despite section 1325(b)(3) courts have flexibility because
> of the provisions of section 1325(b)(1)(B)

In contrast to the decisions in <u>Briscoe</u>, <u>Swan</u>, <u>Farrar-Johnson</u>, <u>Naslund</u>, and <u>Morgan</u>,

the court in <u>In re Meek</u>, which cited <u>Kibbe</u> with approval with respect to that court's

interpretation of "projected disposable income" in a case involving a below median income

debtor, adopted a flexible approach to the expense side of disposable income as well.  The

issue before the court, however, was not whether an above-median income debtor could

deduct the full amount of the mortgage/rent component of the IRS Local Standard amount

even if their actual rent was less or nonexistent, but whether the debtors properly

calculated their deductions on Form 22C.  The court found that the debtors had deducted

their entire mortgage debt and had not established entitlement to an additional IRS

mortgage/rent housing expense deduction.  It nevertheless stated:

> This Court agrees with the basic proposition that the language of § 1325(b)(3)
> limits above median income debtors to the expenses categorized in §
> 707(b)(2)(A) and (B). Congress was very specific as to the expenses it wanted
> to allow above median income debtors. Whether some of the expenses under
> § 707(b)(2) may be more generous than what would be allowed under a
> schedule J, or more miserly, is of no moment. The text of § 1325(b)(3) is
> sufficiently clear, and there is nothing patently absurd about forcing them to
> calculate expenses in accordance with § 707(b)(2)(A) and (B). *See* <u>Casey</u>, 356
> B.R. at 524 (noting that it is "the prerogative of Congress" to require use of
> standardized expenses for above median debtors, even if that means debtors
> might pay less to creditors than under prior law).

370 B.R. at 305-06.  The court in <u>Meek</u>, however, interjected a caveat:

The expense side of the projected disposable income equation is not,

27

however, fully resolved by acknowledging the basic proposition that above median income debtors must use means test expenses.

Recall § 1325(b)(1) requires, on objection, all of a debtor's "projected disposable income" received during the pendency of a plan be applied to make payments to unsecured creditors. "Disposable income" is defined by § 1325(b)(2) as current monthly income received "less amounts reasonably necessary to be expended for support" of the debtor and his or her dependents. *Projection thus effects both income and expenses.*

\*\*\*

While § 1325(b)(3) requires that "[a]mounts reasonably necessary to be expended under paragraph (2)" be determined, for above median income debtors, in accordance with § 707(b)(2)(A) and (B), *this proviso does not alter either the need for "projection" found in § 1325(b)(1) or the limitation of expenses in § 1325(b)(2) to only those amounts reasonably necessary to be expended.* So, as with the income component, the expense side of disposable income is also subject to evaluation in light of the debtor's post-petition plan proposals, even though that inquiry is circumscribed by the overlay of § 707(b)(2).

Id. at 306-07(emphasis supplied).  Citing In re Edmunds, 350 B.R. 636, 644 (Bankr. D.S.C. 2006)(the expense allowance provided by § 1325(b)(3) is a forward-looking concept and is not strictly determined by the mathematical calculation of Form B22C), and In re McPherson, 350 B.R. 38 (Bankr. W.D. Va. 2006), the court in Meek  concluded:

> These cases indicate that the parties may address, and the Court may consider, whether a given expense- within those expenses authorized by § 707(b)(2)(A) and (B)-should be allowed when considered in light of the debtor's post-petition circumstances and, importantly, the proposed chapter 13 plan. As Edmunds notes, this approach is consistent with Congressional intent and legislative history, see 350 B.R. at 643 n. 9, and "is not a modification as to how debtors complete the income or expense portions of Form B22C but rather . . . is merely the application of the Means Test viewed through the lens of § 1325(b) and Congress's instruction that the courts should 'project' disposable income, based upon the disposable income to be received" during the debtor's plan. Id. at 644.

This Court finds the approach in Edmunds, McPherson and like cases gives

28

meaning to and implements the language in § 1325(b)(2) and (3). It is consistent with the overall structure of the disposable income provisions, and with Congressional intent to require debtors to pay creditors to the extent of their postpetition ability. It also provides consistent treatment of both below median income and above median income chapter 13 debtors-both groups are subject to the same forward-looking inquiry and their proposals tested for reasonableness and necessity, even though the applicable expenses are based on schedule J for the former and § 707(b)(2) for the latter. It is also consistent with the approach this Court adopts in connection with current monthly income, as discussed earlier in this Decision.

The Court therefore concludes, in regard to the expense side of determining projected disposable income, that a below median income debtor's expenses are initially asserted in schedule J, while an above median income debtor's expenses must be claimed in accord with § 707(b)(2) standards as incorporated by § 1325(b)(3). Though expenses for above median income debtors are to be "determined in accordance with" § 707(b)(2), other Code language ( i.e., "projected," "reasonably necessary" and "to be expended") allows parties to contest and the Court to consider the provisions of the debtor's proposed plan as well as events that will definitely occur during the pendency of the plan. In this aspect, below median income debtors and above median income debtors are treated alike.

Meek, 370 B.R. at 305-09 (footnotes omitted)(emphasis supplied).[16]

------

[16] Similarly, in re In re McGillis, 370 B.R. 720 (Bankr. W.D. Mich. 2007), a case in which the debtors' actual Schedule J expenses were less than the standard Form 22 C expenses, the court stated:

Section 1325(b)(3) should not be interpreted as categorically substituting the Section 707(b)(2) expense restrictions for the "reasonably necessary" expense requirement already imposed by Section 1325(b)(2). Rather, it should be interpreted as offering a further guideline for ensuring that the expenses claimed by an above-median-income debtor are reasonably necessary. Put differently, Section 1325(b)(3) imposes the same requirement upon an above-median-income debtor as it does upon all other debtors: amounts claimed as expenses under Section 1325(b)(3) must in fact be ultimately expended. McPherson, 350 B.R. at 45. However, Section 1325(b)(3) imposes upon an above-median-income debtor the further requirement that all planned expenditures must also agree with the expense limitations of Sections 707(b)(2)(A) and (B). If that debtor's

D. <u>Analysis</u>

The burden is on the Debtor to establish that her proposed plan is confirmable. *See*

<u>In re McCarthy</u>, 376 B.R. 819, 821 (Bankr. N.D. Ohio 2007). If the Chapter 13 Trustee objects

to the plan, the Debtor specifically must establish that all her projected disposable income

to be received in the applicable commitment period beginning on the date that the first

plan payment is due under the plan will be applied to make payments to unsecured

creditors.  11 U.S.C. § 1325(b)(1)(B).  As noted above, this case does not present an unique

issue.  This Court must determine whether to follow one or the other of the approaches

---

planned expenses exceed what is permitted, then the debtor must conform his Section 1325(b) deductions by reducing them to the amounts allowed by those subsections. On the other hand, the converse is not true, for if the debtor's planned expenses are less, then his Section 1325(b) deductions must still be that lesser amount because that is all that he in fact plans to expend.

. . . Section 1325(b), not Section 707, ultimately controls the determination of disposable income for purposes of plan confirmation under Chapter 13, and that section permits Debtors to deduct only those expenditures that are reasonably necessary for their future support and maintenance. . . .

370 B.R. at 730.The court added:

I do recognize that Interim Rule 1007(b)(6) requires an above-median-income debtor to calculate the expense component of his Section 1325(b) disposable income "as prescribed by" Form B22C. Consequently, one could, if so inclined, interpret this interim rule as overriding the interpretation I am now giving to Section 1322(b)(3). However, at this point in time the interim rules simply represent the Judicial Conference's recommendations. . . [and]. . . the interim rules do not have the weight of law because they have yet to be presented to Congress for its approval. 28 U.S.C. § 2075.

<u>Id.</u> at n.16.

30

epitomized by the nuanced decisions of the courts in <u>Briscoe</u> and <u>Meek</u>.

Section 1325 and the stark differences in how it is being interpreted by bankruptcy courts, as Judge Waldron and Neil Berman observed, "have compromised, if not crippled, any pretense of predictability in the analysis a court might apply in interpreting its many poorly drafted provisions." Waldron and Berman, *supra*, at 196. *See also* David Gray Carlson, *Means Testing: The Failed Bankruptcy Revolution of 2005,* 15 Am. Bankr. Inst. L. Rev. 223, 227 (Spring 2007). Decisions interpreting its various provisions are multiplying, seemingly exponentially, and many of them, like this one, are lengthy as courts attempt to grapple with the permutations and ramifications of its various subsections.

This Court, however, need not write on a blank slate. In <u>Kibbe</u>, the Bankruptcy Appellate Panel, after finding the statute to be ambiguous, stated:

> Rigid adherence to a debtor's prepetition income history would commonly produce results at odds with both congressional purpose and common sense. If a debtor's prepetition averaged income was significantly higher than the debtor's income at plan confirmation, statutory indifference to the change at confirmation would doom any chapter 13 plan. Conversely, if, as here, a debtor's prepetition averaged income was significantly lower than his or her income at plan confirmation, the debtor would be granted a windfall. As a result, unless a debtor's prepetition averaged income was substantially the same as it was at plan confirmation, either creditors would be cheated or, by dint of plan failure, neither the debtor nor the creditors would obtain the benefits that Congress intended for both under chapter 13 of the Bankruptcy Code. We find it unlikely that Congress intended either result. The intent of Congress can be best gleaned by examination of the legislative history surrounding the enactment of BAPCPA:
>
>> The heart of [BAPCPA's] consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ("needs-based bankruptcy relief" or "means-testing"), *which is intended to ensure that debtors repay creditors the maximum they can afford.*

31

> H.R.Rep. No. 109-31, pt. 1, at 2 (2005) (emphasis supplied). The words
> "maximum" and "afford" tell the story. Congress intended that debtors pay
> the greatest amount within their capabilities. Nothing more; nothing less.

Kibbe, 361 B.R. at 314.  *See also* In re Pak, 378 B.R. 257, 265 (B.A.P. 9th Cir.  2007)("the

BAPCPA legislative history does make clear that Congress intended to require debtors to

"make a good-faith effort to repay as much as they can afford.").[17]

Because the debtor's income in Kibbe was below median income and she was not

required to complete Part IV of Official Form B22C, the Bankruptcy Appellate Panel was

not required to resolve the issue under section 1325(b)(3) with respect to the expense side

of the equation that now confronts this Court. In other words, the issue now before this

Court is whether to require adjustment to the expense side of the disposable income

definition for above-median income debtors - - to use a "reality based" assessment of the

Debtor's expenses (Schedule J)  - - or whether to accept (and permit the Debtor to reap the

benefit of) the Local and National Standards as set forth on Form 22C pursuant to 11 U.S.C.

§ 1325(b)(3), subject to a potential objection to confirmation pursuant to 11 U.S.C. §

1325(a)(3).  Because Kibbe does not resolve the issue, this Court must enter the fray and

determine whether and under what circumstances the requirement of section 1325(b)(1)

that the Debtor devote all her projected disposable income to her plan trumps the specific

---

[17] *See* BAPCPA Presidential Signing Statement,
http://www.whitehouse.gov/news/releases/2005/04/20050420-5.html. See 151 Cong.
Rec. S2462-02 (Mar. 10, 2005) (statement of Sen. Sessions)("People who need a fresh start
under this bill will get one. The people who can pay some of their debts back will have
to do that.").

provisions of sections 707(b)(2)(A)(ii)(I) and section 1325(b)(3).

Based upon the review of the cases cited above, this Court concludes that the decision in <u>Briscoe</u> represents the correct approach. The court's thorough and careful reasoning best reconciles the competing views, while construing the statue in a reasonable manner. In view of the lack of ambiguity of the language employed by Congress in section 1325(b)(3) and 707(b)(2), the Court finds that <u>Briscoe</u> strikes the right balance between interpreting the statute as written, while carving out an exception for those instances where a party in interest can demonstrates a change in circumstances giving rise to the applicable expense. 374 B.R. at 19. Accordingly, the Trustee's objection must be overruled.

Although the Trustee has failed to satisfy that test with respect to her "best efforts test" objection, the Court's ruling is without prejudice to the filing of an objection to confirmation on another ground or a motion to dismiss under 11 U.S.C. § 1325(a)(3).[18]  In view of the extraordinary disparity in required plan payments resulting from the financial portraits  produced by Form 22C and Schedules I and J, an examination of the Debtor's subjective intent to repay her creditors is warranted. This case may be one of those times "when a debtor commits so little income to creditors, relative to his true ability . . . to make payment to them based on his actual expenses, that his proffered plan suggests a subjective intent not to make a good faith effort at repayment at all." <u>Briscoe</u>, 374 B.R. at 22.

---

[18] The Court observes that this opinion is limited to the issue of whether an above-median income Chapter 13 debtor's plan passes the best interest test with reference to deduction of expenses. It has no bearing on issues which may arise with respect to plan modifications or the presumption of abuse in Chapter 7 cases.

**IV. CONCLUSION**

In accordance with the foregoing, the Court shall enter an order overruling the

Trustee's objection to confirmation of the Debtor's Chapter 13 plan.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 7, 2008
cc: Nicholas F. Ortiz, Esq., Patricia A. Remer, Esq., U.S. Trustee